UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Personalized Brokerage Services, LLC, | Civil No. 05-1663 PAM/RLE |
| Plaintiff, | |
| v. | **DEFENDANTS' MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS** |
| Charles Lucius, Insurance Formology, LLC, Agency Backbone, LLC, and Independent Brokerage, LLC, | |
| Defendants. | |

Defendants Charles Lucius ("Lucius"), Insurance Formology, LLC, Agency Backbone, LLC, and Independent Brokerage, LLC (the "Entity Defendants"), (collectively, "Defendants"), move the Court to dismiss this action under Rules 12(b)(1), (2), (3) and (6) and 28 U.S.C. §§ 1331, 1367(a) and 1406(a), or alternatively, to transfer it to the District of Kansas under 28 U.S.C. § 1406(a).

## BACKGROUND

This case is essentially an employment action brought by a Kansas employer (PBS) against a former employee (Lucius) and his new Kansas employer (Independent Brokerage), as well as two newly formed Kansas entities of which Lucius is the sole member (Insurance Formology and Agency Backbone). (Affidavit of Charles Lucius ("Lucius Aff.") at ¶ 2.) PBS is a Kansas marketing organization for annuity, life and long-term insurance care products that has its principal place of business in Topeka, Kansas. Lucius, a Kansas resident, worked for PBS in Topeka. The Entity Defendants,

Insurance Formology, Agency Backbone, and Independent Brokerage, are all Kansas LLCs.  Agency Backbone is a concept for a "back office" function for insurance brokers but is not an operational entity.  (Lucius Aff. at ¶ 3.)  Insurance Formology is an entity designed to facilitate use of standardized insurance forms.  (Lucius Aff. at ¶ 4.)

Lucius worked for PBS from April 17, 2000 until June 8, 2005, when PBS terminated him without notice or severance.  (Lucius Aff. at ¶¶ 5-8.)   Lucius, who did not have a noncompete agreement, formed Independent Brokerage after his abrupt termination to compete with PBS.  (*Id*.)  Two months later, PBS filed this Complaint alleging ten state law claims for misappropriation of trade secrets (Count II), breach of fiduciary duty (Count III), breach of the duty of loyalty (Count IV), usurpation of corporate business opportunities (Count V), tortious interference with business relationships (Count VI), civil theft (Count VII), conversion (Count VIII), employee raiding (Count IX), conspiracy (Count X), and injunctive relief (Count XI).  (Complaint at ¶¶ 75-149.)  In addition to those ten state law causes of action, PBS asserts only one federal claim alleging Lucius's purported violation of the CFAA (Count I).  (Complaint at ¶¶ 66-74.)

**I.     THIS MATTER SHOULD BE DISMISSED BECAUSE THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE ACTION AND THE COMPLAINT SHOWS PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER THE CFAA (COUNT I).**

Defendants move to dismiss the action for lack of subject matter jurisdiction. Dismissal of a complaint for lack of subject matter jurisdiction is proper where, as here, the complaint shows there is no basis for a claim arising under a federal statute.  *See*

105054.1                                              2

*Wheeler v. St. Louis Sw. Ry. Co.*, 90 F.3d 327, 329 (8th Cir. 1996).  Indeed, "[w]hen it clearly appears that the Court lacks jurisdiction, the Court has no authority to reach the merits, and should dismiss the action."  *Togba v. U.S.*, No. 01-1916, 2002 WL 31185861, at *2 (D. Minn. Sept. 30, 2002) (citing *Melo v. United States*, 505 F.2d 1026, 1030 (8th Cir. 1974)).

PBS concedes, as it must, that there is no diversity jurisdiction in this case, since all parties reside in **Kansas**  (Complaint at ¶¶ 1-9), and the alleged liability-producing acts occurred in **Kansas** where Lucius was employed by PBS and the Entity Defendants were formed.  PBS instead purports to establish federal question jurisdiction under 28 U.S.C. § 1331 by only *vaguely* alleging a violation of the CFAA (Count I).  (Complaint at ¶ 70).  Nowhere in the complaint, however, does PBS identify what section of the statute Lucius purportedly violated -- instead it only alleges a generic violation of "18 U.S.C. § 1030 et seq."  (*Id.*)

Of PBS's eleven claims, only Count I even attempts to state a claim arising under a federal statute.  The remainder are state law claims that PBS hopes to drag into federal court under the guise of supplemental jurisdiction.  For whatever reason, PBS does not want to have this case heard in Kansas state court, where it rightfully belongs.

The CFAA is a criminal statute, but provides for a limited civil right of action in Section 1030(g).  That section provides that a civil action may only be brought if conduct involves one of the factors set forth in clause (i), (ii), (iii), (iv) or (v) of subsection

(a)(5)(B).[1]  18 U.S.C. § 1030(g*)*.  In addition, the subsection (a)(5)(B) factor, (i.e., a loss of at least $5,000, *see* subsection (a)(5)(B)(i)), must have been caused by conduct set forth in subsection (a)(5)(A)(i-iii).[2]  Thus, in order for PBS to bring a claim under the CFAA, PBS must allege a violation of Section 1030(a)(5)(B).  *McLean v. Mortgage One & Fin. Corp.*, No. 04-1158, 2004 WL 898440, at *2 (D. Minn. April 9, 2004) (Magnuson, J.) (the CFAA "limits civil enforcement to actions claiming a violation of § 1030(a)(5)(B)[.]").  *See also Four Season Hotels and Resorts, BV v. Consorcio Barr*, 267 F. Supp.2d 1268, 1321-22 (S.D. Fla. 2003), *rev'd in part on other grounds*, ___ Fed. Appx. ___ (11th Cir. Mar. 31, 2005) (unpublished) ("any person who suffers damage or

---

[1] Section 1030(a)(5)(B) is satisfied by:
> (i) loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;
> (ii) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;
> (iii) physical injury to any person;
> (iv) a threat to public health or safety; or
> (v) damage affecting a computer system used by or for a government entity in furtherance of the administration of justice, national defense, or national security[.]

28 U.S.C. § 1030(a)(5)(B)(i-v).

[2] A person violates Section 1030(a)(5)(A) if he or she:
> (i) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;
> (ii) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or
> (iii) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage[.]

28 U.S.C. § 1030(a)(5)(A)(i-iii).

loss by reason of a violation of clause (i) of subsection (a)(5)(B) of the CFAA may maintain a civil action"). The Ninth Circuit has a slightly different view but still requires a violation of (a)(5)(B). *See Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 n.5 (9th Cir. 2004). Even cursory review of the complaint reveals, however, that PBS does not allege a violation of any subsection of Section 1030(a)(5)(B).

Moreover, "subsection 1030(a)(2)(C) is intended to protect only against the <u>interstate</u> or foreign theft of information by computer." S. Rep. 104-357, 1996 WL 492169 at 7-8 (emphasis added). In its complaint, PBS only vaguely alleges that Lucius accessed PBS's computers "without authorization, or in excess of his authorization, in order to obtain information *involving* interstate communications" and "knowingly and with an intent to defraud[,]" caused losses "in an amount aggregating at least $5,000 in value." (Complaint at ¶¶ 67-69) (emphasis added). Nowhere in the complaint does PBS allege the *interstate theft* of information as opposed to the use of **Kansas** information in **Kansas** by a **Kansas** resident. Nor does PBS identify any facts regarding, for example, which PBS computers were accessed or any basis for damages that were caused by the President of the PBS viewing its own computers. PBS cannot suggest that a highly skilled insurance professional depended upon PBS information to start his own brokerage business. After all, Lucius had only worked at PBS for five years and came to PBS with his own valuable skill set.

PBS particularly fails to allege how interstate information was accessed "without authorization" (as the CFAA requires, *see* subsection (a)(5)(A)(ii-iii)). The statute defines unauthorized access as "access[ing] a computer with authorization and [using]

105054.1                             5

such access to obtain or alter information in the computer that the accessor is not entitled to so obtain or alter." Section 1030(e)(6).  This essential allegation is lacking in its Complaint because PBS is trying to use this statute for a purpose that Congress did not intend.

Indeed, the utter lack of factual basis for the CFAA claim reveals that it was plead for the purpose of trying to procure federal jurisdiction over the ten state law claims that really make up this case.  This is improper forum shopping.  This is an action between Kansas residents and entities involving state law claims and has no place in federal court.  Because there is no basis for federal question jurisdiction in this case, this Court must dismiss the action.  *Wheeler*, 90 F.3d at 329.  Further, because an original jurisdictional basis is lacking, the Court must also dismiss PBS's state law claims.  *See, e.g.*, *Jordahl v. Democratic Party of Virginia*, 947 F. Supp. 236, 241-42 (W.D. Va. 1996) ("Because the court lacks subject-matter jurisdiction over the plaintiffs' federal claims, it has no supplemental jurisdiction over the state law claims.") (quoting 28 U.S.C. § 1367(a),"[I]n any civil action of which the district courts *have original jurisdiction,* the district courts shall have supplemental jurisdiction over all other claims that . . . form part of the same case or controversy[.]") (emphasis added)).  *Accord Gill v. Upson Reg'l Med. Center*, 1 F.Supp.2d 1480, 1481 (M.D. Ga. 1998) (dismissing state law claims).[3]

---

[3] Even if the Court had original jurisdiction over the CFAA claim, this Court should decline to exercise supplemental jurisdiction over the ten state law claims because they clearly "substantially predominate" over the CFAA claim.  *See* 28 U.S.C. § 1367(c)(2) ("district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the claim substantially predominates over the claim or claims over which the district court has original jurisdiction[.]")

## II. ALTERNATIVELY, THIS ACTION SHOULD BE DISMISSED FOR IMPROPER VENUE UNDER 28 U.S.C. § 1406(a).

Dismissal of an action for improper venue is governed by 28 U.S.C. § 1406(a) which provides that the "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interests of justice, transfer such case to any district or division in which it could have been brought." Venue in Minnesota is only proper if "a substantial part of the events or omissions giving rise to the claim occurred" in this district. *See* 28 U.S.C. § 1391(b)(2).[4] Here, the Complaint shows it is clear that a substantial part of the events affirmatively did ***not*** occur in Minnesota. Venue in this District is improper.

PBS's allegations, which must be accepted as true for purposes of this motion to dismiss, unequivocally state that the conduct about which it complains took place in Kansas. It is undisputed that Lucius, a Kansas resident, was working for PBS, a Kansas LLC doing business in Kansas, in Topeka, Kansas. All of the alleged computer-related conduct detailed in PBS's complaint involved Lucius's actions in Kansas while working at PBS. In particular, the alleged unauthorized use of PBS's computers occurred in Kansas where PBS's computers reside. The only alleged improper conduct would therefore have occurred squarely in Kansas.

Further, PBS obtained service of process on each Defendant at their Kansas addresses. The witnesses are primarily located in Kansas. In addition to the Defendants

---

[4] Section 1391(b)(1) is not applicable because all defendants do not reside in Minnesota. *See* 28 U.S.C. § 1391(b)(1) (venue proper in "a judicial district where any defendant resides, if all defendants reside in the same State[.]").

and their employees, the Complaint refers to other employees of PBS who reside in Kansas (i.e., Complaint at ¶¶ 11, 14, 18) and other former employees of PBS who reside in Kansas (i.e., Tami Lucius and ten former PBS employees (Complaint at ¶¶ 36, 60-62)). Jeff Foley, another potential witness, resides in Colorado, not Minnesota. (Complaint at ¶ 53.) The physical evidence is in Kansas. There is no operative contractual venue selection clause.

The only marginally relevant Minnesota-related facts are that PBS is a wholly owned subsidiary of a Minnesota limited liability company, Lucius owns real estate in Brainerd, Minnesota (a vacation cabin), and Lucius traveled to Minnesota on six occasions on PBS business, none of which are alleged to relate to the new businesses about which PBS complains. There is no suggestion that the Minnesota visits had anything to do with the allegations related to computers that supposedly form the basis for the federal claim. (Complaint at ¶¶ 2, 5). Indeed, what PBS really is alleging is that while in Minnesota, Lucius failed to mention some business activities in Kansas. If this alleged "omission" could serve as the basis for venue in Minnesota, there will be no limit to venue and the ability of a determined plaintiff like PBS to forum shop would be unlimited.

An additional factor for the Court to consider is that numerous factual allegations in PBS's complaint are not only false but will be shown to be recklessly false and made for the purpose of harming Lucius's competitive business, Independent Brokerage, by allowing PBS to broadly distribute this Complaint to Lucius's industry contacts. (Lucius Aff. at ¶¶ 9-11.) For example, PBS alleges that Lucius abruptly announced his

resignation on June 8, 2005.  (Complaint at ¶ 56.)  On the contrary, on June 8, Pat Foley and several other executives from Allianz traveled to Topeka, Kansas, ostensibly to meet with Lucius, but carried with them an unsolicited pre-typed resignation letter for Lucius to sign.  (Lucius Aff. at ¶ 8.)  Plaintiff alleges that by mid-April 2005 Lucius had secured property for a new business venture.  (Complaint at ¶ 21.)  On the contrary, Lucius signed a lease for new office space for Independent Brokerage on July 1, 2005, after being terminated abruptly and involuntarily from a highly compensated executive position with no severance.  (Lucius Aff. at ¶ 9.)  Lucius had been describing to his PBS business associates the potential benefits of his ideas for new technologies and business methods for over a year, to no avail.

The improper venue statute, 28 U.S.C. § 1406(a), gives this Court the authority to dismiss this action where there is no statute of limitations problem that would inhibit re-filing in the correct jurisdiction.  *Lowery v. Estelle*, 533 F.2d 265, 267 (5th Cir. 1976) (cited with approval in *Barber v. Simpson*, 94 F.3d 648, 1996 WL 477005, at *1 (8th Cir. Aug. 23, 1996)).  As was the case in *Barber*, PBS's chosen forum, Minnesota in this case, is not the correct venue because a substantial part of the events giving rise to PBS's claim did not occur here.  *Id.* [5]  Dismissal is appropriate.

---

[5] The Eighth Circuit reversed the dismissal for improper venue *only* because plaintiff would have been barred by the statute of limitations from re-filing.

### III. THE COURT LACKS PERSONAL JURISDICTION OVER THE ENTITY DEFENDANTS AND PLAINTIFF FAILS TO STATE A CLAIM FOR CONSPIRACY.

The Entity Defendants (Independent Brokerage, Insurance Formology, and Agency Backbone) move the Court to dismiss all claims against them for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Whether the Court were to seek to exercise jurisdiction over them regarding the CFAA claim or the ten state law claims, the Entity Defendants are entitled to a dismissal because PBS does not allege they have any minimum contacts with Minnesota sufficient to satisfy due process. *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). The Complaint does not allege that the Entity Defendants had any contact whatsoever with Minnesota. (*See, e.g.,* Complaint at ¶¶ 6-8.) The Complaint does not even allege that Lucius acted on behalf of any of the Entity Defendants at any time when he was in Minnesota. On the contrary, the allegations are that he was acting on behalf of PBS while in Minnesota. (*Id.* at ¶ 41.)

Even if PBS were to allege and prove such a jurisdictional fact, as a matter of law, "conduct of single or isolated items of activities in a state in [a] corporation's behalf are not enough to subject it to [general jurisdiction.]" *Int'l Shoe*, 326 U.S. at. 317; *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1103 (8th Cir. 1996) (simple commercial contacts unrelated to plaintiff's claims insufficient for general jurisdiction). Plaintiff bears the burden of demonstrating by a *prima facie* showing that personal jurisdiction over these entities is appropriate. *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998).

In fact, the Court will observe the only claim of any conduct by the Entity Defendants is in Count X, where PBS attempts to assert a civil conspiracy claim. That claim does not properly allege a cause of action for civil conspiracy, however, because it fails to allege that Lucius or any Entity Defendant took any action in furtherance of the alleged conspiracy to cause PBS harm and that PBS was thereby harmed. (Complaint at ¶¶ 137-42.) Without this critical allegation, PBS has not stated a cause of action under either Kansas or Minnesota common law of conspiracy. *Meyer Land & Cattle Co. v. Lincoln County Conservation Dist.*, 31 P.3d 970, 976 (Kan. Ct. App. 2001) (conspiracy requires (1) two or more persons (2) with an object to be accomplished (3) with a meeting of the minds in the object or course of action, (4) one or more unlawful overt acts; and (5) damages proximately caused; and there must be a valid underlying tort); *Harding v. Ohio Cas. Ins. Co.*, 41 N.W.2d. 818, 824-27 (Ohio 1950); *Am. Computer Trust Leasing v. Jack Farrell Implement Co.*, 763 F. Supp. 1473, 1489-91 (D. Minn. 1991) ("mere existence of a combination of persons acting in concert is insufficient to establish civil conspiracy").

The Complaint does incorporate by reference in its conspiracy count the previous nine causes of action, but it omits the essential allegation that those actions were taken *in furtherance of* the conspiracy. The conspiracy claim should be dismissed for failure to state a claim as to all Defendants under Rule 12(b)(6), and should not be used as a basis to support personal jurisdiction over the Entity Defendants under Rule 12(b)(2).

## IV. ALTERNATIVELY, THE COURT SHOULD TRANSFER THE ENTIRE CASE TO KANSAS UNDER 28 U.S.C. § 1406(a).

Under 28 U.S.C. §1406(a), this Court has the option to transfer the case to the District of Kansas. Even before the express amendment of the statute, this section was held to be "broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962). The test, which is less rigorous than the test under 28 U.S.C. § 1404, is whether transfer would more efficiently advance the case to a more "expeditious and orderly adjudication" than would dismissal. *Mayo Clinic v. Kaiser*, 383 F.2d 653, 654 (8th Cir. 1967); *Wilson v. St. Mary's Hosp*, 822 F. Supp. 1450, 1451 (D. Minn. 1993) (transfer "facilitates" adjudication on the merits). Here, it is clear that all of the facts have a strong nexus to Kansas, not Minnesota, demonstrating that Kansas would be the appropriate forum to resolve all issues.

Defendants support dismissal of this action because of the predominance of state law issues and patent insufficiency of the federal claim. This action should not burden a federal court in Kansas. However, if this Court chooses not to dismiss the action, transfer is preferable and more appropriate than continuation of this action in Minnesota, a venue with little, if any, contact to the claims at issue.

## CONCLUSION

The lack of a legitimate basis for federal question jurisdiction in this action is plain. Thus, the Court should dismiss the action in its entirety. This result is favored in

light of the absence of personal jurisdiction over the Entity Defendants and the defective causes of action for computer fraud and conspiracy.  This is a case that should be litigated, if at all, in a state court case in Kansas.  Alternatively, the Court should dismiss the action for improper venue or, at a minimum, transfer the action to the District of Kansas in Topeka.

Dated:  August 29, 2005                                   **ANTHONY OSTLUND & BAER, P.A.**


By: *s/ Shannon M. Wise*
       Nathan P. Brenna (#275980)
       Shannon M. Wise (# 343389)
3600 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402
(612) 349-6969

**MCDOWELL, RICE, SMITH & BUCHANAN, P.C.**
R. Pete Smith
Rhonda Smiley
605 West 47th Street, Suite 350
Kansas City, MO 64112-1905
(816) 753-5400

**ATTORNEYS FOR DEFENDANTS**