UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Personalized Brokerage Services, LLC,                    Civil No. 05-1663 (PAM/FLN)

Plaintiff,

v.                                                       **MEMORANDUM AND ORDER**

Charles Lucius; Insurance Formology,
LLC; Agency Backbone, LLC; and
Independent Brokerage, LLC;

Defendants.

---

This matter is before the Court on Defendants' Motion to Dismiss. For the reasons that follow, the Motion is denied.

**BACKGROUND**

Plaintiff Personalized Brokerage Services, LLC ("PBS") is a Kansas corporation with its principal place of business in Topeka, Kansas. PBS provides marketing for annuity, life, and long-term insurance care products. PBS is a wholly-owned subsidiary of Allianz Individual Insurance Group ("AIIG"), which is a Minnesota company. Defendant Charles Lucius is a Kansas resident who worked for PBS from April 2000 until June 2005. At the time of his resignation, he was PBS's President and a member of its Board of Managers, which is equivalent to a Board of Directors. With the exception of Lucius, all of the other PBS Board members were Minnesota employees of Allianz Life Insurance Company of North America, which is also a Minnesota corporation and the sole member of AAIG. As a member of the

Board, Lucius was required to fill out an annual form disclosing outside business activities and return the form to Minnesota.

While he worked for PBS, Lucius traveled to Minnesota many times on PBS business for training, meetings, and other work events. He also frequently communicated with his supervisors in Minnesota via telephone. Toward the end of his employment with PBS, Lucius formed the other three Defendant corporations: Insurance Formology, Agency Backbone, and Independent Brokerage. All three companies are Kansas limited liability companies, and Lucius is the sole member of the entities. Lucius did not disclose the formation of these companies to PBS in his annual disclosure or at any other time, as was required. PBS avers that Lucius created these companies to compete directly with it. According to PBS, not only did Lucius usurp its business opportunities and breach his fiduciary duties as a corporate officer, but he also wrongfully solicited PBS's employees, misused its proprietary technology, and misappropriated its resources to create his new companies. PBS alleges ten causes of action based on this behavior: (1) violation of the Computer Fraud and Abuse Act ("CFAA"), (2) misappropriation of trade secrets, (3) breach of fiduciary duty, (4) breach of duty of loyalty, (5) usurpation of corporate business opportunities, (6) tortious interference with business relationships, (7) civil theft, (8) conversion, (9) employee raiding, and (10) conspiracy.

All Defendants move to dismiss the case on the following grounds: (1) lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1); (2) failure to state a claim under Rule 12(b)(6); and (3) improper venue under Rule 12(b)(3). Additionally, the corporate

Defendants move to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. Finally, all Defendants move in the alternative to transfer the action to Kansas, under 28 U.S.C. § 1406.

The afternoon before the hearing on Defendants' Motion, PBS filed an Amended Complaint. At the hearing, Defendants asked the Court to consider their Motion as addressing the Amended Complaint, and they orally addressed the new allegations. Accordingly, the Court will treat Defendants' Motion as addressing the Amended Complaint.

**DISCUSSION**

**A.     Standard of Review**

On the Motion to Dismiss, the Court takes all facts alleged in the Amended Complaint as true. See Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). The Court must construe the allegations in the Amended Complaint and reasonable inferences arising from the Amended Complaint favorably to PBS. See Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).

**B.     Jurisdiction**

Questions pertaining to a court's jurisdiction must be addressed before resolving issues on the merits. See Crawford v. F. Hoffman-La Roche Ltd., 267 F.3d 760, 764 (8th Cir. 2001). Moreover, if an issue of subject matter jurisdiction can be easily resolved, it should be addressed before questions of personal jurisdiction. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 587-88 (1999).

    1.     Subject Matter Jurisdiction

PBS has only one federal law claim: violation of the CFAA. A civil cause of action under this statute requires a plaintiff to show that a defendant intentionally accessed a protected computer without authorization and, as a result, caused a loss of at least $5000 in aggregate value. See 18 U.S.C. § 1030(a)(5)(B). As a PBS employee, Lucius was authorized to use its computers, but PBS contends he exceeded that authorization by using its computers to set up his competing businesses, email competitors, distribute PBS's proprietary information to software developers, and negotiate contracts to sell products to PBS's competitors. An employee who exceeds authorized access to an employer's computer may violate the CFAA. See Pac. Aerospace & Elec., Inc. v. Taylor, 295 F. Supp. 2d 1188, 1196-97 (E.D. Wash. 2003); see also EF Cultural Travel BV v. Explorica, Inc., 274 F.3d 577, 581-83 (1st Cir. 2001); Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc., 119 F. Supp. 2d 1121, 1124-25 (W.D. Wash. 2000).

Defendants next challenge PBS's allegations of loss. The Amended Complaint alleges losses aggregating at least $5000 in value, including but not limited to the costs of responding to the alleged offense and conducting a damage assessment. This type of loss is permitted under the CFAA. See EF Cultural Travel, 274 F.3d at 584-85. Defendants also submit PBS has not identified its damages with specificity, but Federal Rule of Civil Procedure 8 does not require PBS to identify its precise damages at this time. Fed. R. Civ. P. 8(a) (requiring only a "short and plain statement of the claim"). Finally, contrary to Defendants' averment, PBS has met the requirement for interstate activity, see 18 U.S.C. § 1030(e)(2)(B), because many of the alleged communications were between Kansas and Maryland, where the software was being

developed for Lucius's new companies. The Court has federal question subject matter jurisdiction over the CFAA claim and supplemental jurisdiction over the state law claims.

    2.    <u>Personal Jurisdiction</u>

To survive a Rule 12(b)(2) challenge, PBS must establish a prima facie case that personal jurisdiction exists. See <u>Digi-Tel Holdings, Inc. v. Proteq Telecomm. Ltd.</u>, 89 F.3d 519, 522 (8th Cir. 1996). In determining whether PBS has set forth a prima facie case, the Court must view all evidence in the light most favorable to PBS and resolve all factual disputes in PBS's favor. See <u>id.</u>

The Court can exercise personal jurisdiction over a nonresident defendant if (1) Minnesota's long-arm statute, Minn. Stat. § 543.19, is satisfied; and (2) the exercise of personal jurisdiction does not offend due process. <u>Id.</u> Because Minnesota's long-arm statute extends the personal jurisdiction of Minnesota courts as far as due process allows, <u>see e.g.</u>, <u>In re Minn. Asbestos Litig.</u>, 552 N.W.2d 242, 246 (Minn.1996), the Court need only evaluate whether the exercise of personal jurisdiction comports with the requirements of due process. See <u>Guinness Import Co. v. Mark VII Distribs., Inc.</u>, 153 F.3d 607, 614 (8th Cir.1998).

Due process requires that the defendant have "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (citation omitted). Sufficient minimum contacts exist when the "defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980). There must

be some act by which the defendant "purposefully avails itself of the privileges of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). In contrast, contacts that are merely random, fortuitous, attenuated, or that are the result of "unilateral activity of another party or a third person" will not support personal jurisdiction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (citation omitted).

To determine the sufficiency of a defendant's conduct with the forum state, the Court examines five factors: (1) the nature and quality of the contacts; (2) the quantity of the contacts; (3) the relation between the contacts and the action;[1] (4) the forum state's interest in the litigation; and (5) the convenience of the parties. Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 648 (8th Cir. 2003). The fourth and fifth factors are secondary and not determinative in the analysis. Minn. Min. & Mfg. Co. v. Nippon Carbide Indus. Co., Inc., 65 F.3d 694, 697 (8th Cir. 1995).

    a.    <u>Purposeful Availment</u>

Lucius concedes he is subject to personal jurisdiction in Minnesota. He has a vacation home here, and he has a Minnesota license to sell insurance. While at PBS, he reported to its

---

[1] The third factor distinguishes between general and specific jurisdiction. Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1432 (8th Cir. 1995). General jurisdiction is present whenever a defendant's contacts with the forum state are so "continuous and systematic" that it may be sued in the forum over any controversy, independent of whether the cause of action has any relationship to the defendant's activities within the state. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984). Specific jurisdiction refers to jurisdiction over causes of action arising from or related to the defendant's actions within the forum state. Burger King, 471 U.S. at 472-73.

Board, which is located here, and he regularly flew to Minnesota on business. In addition, at least three of the claims in this case stem directly from Lucius's failure to report his activities to the Board in Minnesota: breach of fiduciary duty, breach of the duty of loyalty, and usurpation of corporate business opportunities. The Court finds it has both specific and general personal jurisdiction over Lucius.

PBS contends that the Court has jurisdiction over the corporate Defendants because they purposely availed themselves of the laws of Minnesota. According to PBS's evidentiary showing,[2] Independent Brokerage pursues business opportunities and transacts business in this state. It has contracted with two Minnesota insurance agents, who formerly worked with PBS, to conduct business here. Independent Brokerage also uses Lucius's insurance license to conduct business in Minnesota; it transacts business under the name Charles E. Lucius, and it is licensed in his individual capacity. As to Insurance Formology, it has identified fifty-one business opportunities in Minnesota, and it has sold or attempted to sell services to at least eight Minnesota customers. Insurance Formology's product was created with Lucius's allegedly unlawful use of PBS's products and resources. Defendants' contacts were not only purposeful and directed, but they are directly related to PBS's claims in that Defendants are now competing with PBS and marketing the fruits of Lucius's allegedly unlawful acts in Minnesota.

---

[2] Defendants have challenged PBS's evidence of their contacts with Minnesota with evidence of their own, but as required, the Court has viewed all evidence in the light most favorable to PBS and resolved all factual disputes in PBS's favor.

Moreover, one can conclude from PBS's evidence that Lucius's failure to report his outside business activities to the Board in Minnesota was not only intended to benefit Defendants but was done on their behalf as their agent. See Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1433-34 (8th Cir. 1995) (attributing the actions of a corporate officer to the corporation because it subsequently ratified his actions). Significant to this finding is the fact that Lucius is the sole member of the corporate Defendants. These entities supported and accepted Lucius's failure to report, which led directly to the claims for breach of fiduciary duty, breach of the duty of loyalty, and usurpation of corporate business opportunities. Because the Court is attributing Lucius's actions to the corporate Defendants, it is appropriate to turn briefly to Defendants' argument that Lucius's omissions to act cannot constitute contacts with Minnesota so as to confer jurisdiction. To the contrary, a failure to perform a legally required act within a forum can establish personal jurisdiction. See Burger King, 471 U.S. at 479-80 (refusal to make contractually obligated payment sufficient to establish jurisdiction); Kopperud v. Agers, 312 N.W.2d 443, 445 (Minn. 1981) (failure to disclose inadequacy of security for promissory notes, which led to claim of tortious fraud, sufficient to establish jurisdiction). In this case, the duty to report outside business dealings existed in Minnesota, where the PBS Board is located, and when Lucius failed to report his activities, the alleged breaches of fiduciary duties and usurpation of corporate opportunity occurred here.

Considering the corporate Defendants' particularly close relationship with Lucius, who is the sole member of these entities, the Court concludes that it has personal jurisdiction over

these Defendants. It is reasonable and fair to expect them to conduct their defense in Minnesota. Lucius is the founder and sole member of the corporate Defendants, and they cannot credibly claim surprise at being haled into court here. Lucius must be here for purposes of this litigation, and therefore, it will not be inconvenient for the corporate Defendants to appear. The Court acknowledges that the question of personal jurisdiction is a close call, but in such cases, the Court must resolve any doubts in favor of jurisdiction. See Hardrives, Inc. v. City of LaCrosse, 240 N.W.2d 814, 818 (Minn. 1976).

      b.    Conspiracy

Alternatively, PBS contends that the existence of a civil conspiracy establishes personal jurisdiction for all corporate Defendants because Lucius's acts in furtherance of the conspiracy are attributable to the other co-conspiring Defendants. This "conspiracy theory" of personal jurisdiction is widely accepted by the courts. See, e.g., Textor v. Bd. of Regents of N. Ill. Univ., 711 F.2d 1387, 1392 (7th Cir. 1983) (citing cases); Remmes v. Int'l Flavors & Fragrances, Inc., 389 F. Supp. 2d 1080, 1093-94 (N.D. Iowa 2005) (citing cases); Motorola Credit Corp. v. Uzan, 274 F. Supp. 2d 481, 574 (S.D.N.Y. 2003), vacated in part on other grounds by 388 F.3d 39 (2d Cir. 2004). Whether an alleged conspiracy can establish personal jurisdiction is a question of state law. Remmes, 389 F. Supp. 2d at 1094 (citing Davis v. A&J Elec., 792 F.2d 74, 76 (7th Cir. 1986); Textor, 711 F.2d at 1392-93). Minnesota has endorsed the conspiracy theory of personal jurisdiction.

> Our [long-arm] statute, however, does not require a finding that each defendant be physically present in this state at the time the conspiracy has its fruition. Once participation in a tortious conspiracy–the effect of which is felt in this

> state–is sufficiently established, actual physical presence of each of the alleged conspirators is not essential to a valid assertion of jurisdiction. This construction of our statute follows from the premise that the legislature intended the statute to reach as far as constitutional limitations would permit.

Hunt v. Nev. State Bank, 172 N.W.2d 292, 311 (Minn. 1969).

In Minnesota, a plaintiff sufficiently alleges the existence of a civil conspiracy by showing that the defendants combined to accomplish either an unlawful purpose or a lawful purpose through unlawful means. Harding v. Ohio Cas. Ins. Co., 41 N.W.2d 818, 824 (Minn. 1950). Anyone who joins a conspiracy after its formation and knows of its existence is a party to all acts as if he or she was an original conspirator. Id. at 823. To establish personal jurisdiction based on a conspiracy theory, PBS must show "(1) the existence of a conspiracy; (2) the nonresident's participation in or agreement to join the conspiracy; and (3) an overt act taken in furtherance of the conspiracy within the forum's boundaries." Remmes, 389 F. Supp. 2d at 1095-96 (quoting Jung v. Ass'n of Am. Med. Colls., 300 F. Supp. 2d 119, 141 (D.D.C. 2004)).

In the case at hand, Count 10 of the Amended Complaint alleges a conspiracy between all Defendants to harm PBS unlawfully. Viewing the facts and inferences in the light most favorable to PBS and resolving all factual disputes in its favor, PBS has shown that the Defendant corporations participated in and agreed to Lucius's allegedly unlawful acts. The Defendant corporations were staffed with ex-PBS employees, and their products were developed and marketed with PBS resources. The corporate Defendants also conspired with Lucius to hide their existence from PBS. In addition, PBS has shown that Lucius failed to

report his activities in establishing the Defendant corporations to the PBS Board in Minnesota. Defendants vigorously argue that PBS may not base a conspiracy claim on a failure to act. However, failing to perform a required act may be an overt act in furtherance of a conspiracy. See Remmes, 289 F. Supp. 2d at 1096 (where the defendants concealed the health risks of butter flavorings). Similarly, the Court finds here that Lucius's alleged breaches of fiduciary duty and usurpation of business opportunity were overt acts in furtherance of the conspiracy. Consequently, PBS has made a prima facie case of jurisdiction based on conspiracy.

Finally, as previously discussed, asserting personal jurisdiction over all Defendants is reasonable. Lucius is the founder and sole member of the corporate Defendants. Thus, Defendants could have anticipated being haled into court here, and it will not be inconvenient for them to appear. The Court has personal jurisdiction over all Defendants based on the civil conspiracy, and dismissal is not warranted under Rule 12(b)(2).

**B.     VENUE**

Defendants contend this action should be dismissed for improper venue under 28 U.S.C. § 1406(a). However, a case may be brought in a district where a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b)(2) (emphasis added). PBS acknowledges that most of the conduct relevant to this case occurred in Kansas, but it correctly notes that venue may be proper in multiple districts, see Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995). Indeed, a court should not engage in a balancing test to determine which district has the most contacts, only whether a claim has a substantial connection to a particular district. Setco Enter. Corp. v. Robbins, 19 F.3d 1278, 1281 (8th Cir. 1994).

Viewing all the facts and inferences in PBS's favor, PBS has shown that substantial events or omissions giving rise to its claims occurred in Minnesota. As a PBS officer and Board member, Lucius was required annually to report his outside business activities to the Board in Minnesota. PBS has shown that Lucius failed to report all of his outside business activities in forming the Defendant businesses to the Board. At least three of Lucius's claims are based directly on this omission: breach of fiduciary duty, breach of the duty of loyalty, and usurpation of corporate opportunity. Further, one of the key elements to the CFAA claim is Lucius's unauthorized access to PBS's computers, and only the Board could have authorized Lucius's access to PBS's computers. Venue is proper in Minnesota.

In the alternative to dismissal based on improper venue, Defendants ask the Court to transfer this case to Kansas under 28 U.S.C. § 1406(a). However, § 1406(a) permits transfer only when there is improper venue, as an alternative to dismissal. Because venue is proper here, § 1406(a) does not apply. Defendants' request to transfer the case to Kansas is denied.[3]

## C.    FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)

Defendants seek dismissal of the conspiracy claim, arguing that PBS failed to allege that any Defendant took action in furtherance of the alleged conspiracy. As previously stated, a civil conspiracy is a combination of persons or entities agreeing to accomplish either an unlawful purpose or a lawful purpose by unlawful means. Harding, 41 N.W.2d at 824. The

---

[3] At the hearing, the Court asked Defendants about the applicability of 28 U.S.C. § 1404, but counsel explicitly declined to invoke this statute as a basis for transfer and stated that Defendants were requesting transfer only under § 1406. Accordingly, the Court does not address whether a change of venue would be appropriate under § 1404.

Amended Complaint alleges that Defendants agreed to harm PBS unlawfully, specifically by wrongfully accessing PBS's computers, misappropriating trade secrets, usurping corporate business opportunities, tortiously interfering with business relationships, civil theft, conversion, and employee raiding. PBS further alleges that Lucius and the corporate Defendants conspired to hide the existence of the corporate Defendants from PBS so that Lucius could appropriate PBS's employees, equipment, money, and resources for the benefit of the corporate Defendants. PBS has adequately stated a claim for civil conspiracy.

**CONCLUSION**

This Court has subject matter jurisdiction over the claims in this case and personal jurisdiction over all Defendants. Venue is proper in Minnesota. PBS has adequately pled claims under the CFAA and for civil conspiracy. Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Clerk Doc. No. 13) is **DENIED**.

Dated: January 25, 2006

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge